# CASES

# APPELLATE COURTS OF ILLINOIS

THIRD DISTRICT—MAY TERM, 1891.

### THOMAS ROSE ET AL.
### v.
### JOHN T. RUYLE.

*Trespass* Quare Clausum—*Pleading—Character of Plaintiffs—Possession—Evidence.*

1. In an action of trespass *quare clausum*, where the defendants pleaded, first, not guilty, second, that the premises were the close and freehold of the defendants, and third, that the close was not the close of the plaintiff, a replication to the second and third pleas that, at the time when, etc., the plaintiff was in the peaceable possession of the said close, was bad on demurrer as stating a mere conclusion. It should have stated the facts showing how plaintiff's possession was consistent with the title which the replication admitted to be in defendants.

2. Possession obtained from the owner under a verbal agreement to purchase, with payment in part and substantial improvement made, is lawful as against the owner and his heirs until the right is forfeited or determined according to the contract.

3. Parol testimony as to the arrangement between the owner and the plaintiff under which plaintiff entered into possession was admissible to characterize plaintiff's possession.

[Opinion filed April 11, 1892.]

APPEAL from the Circuit Court of Calhoun County; the Hon. G. W. HERDMAN, Judge, presiding.

VOL. XLVI 2          ( 17 )

Messrs. T. J. SELBY and F. M. GREATHOUSE, for appellants.

Mr. JOSEPH S. CARR, for appellee.

MR. JUSTICE PLEASANTS. Trespass *quare clausum*, brought by appellee against appellants, together with John C. Rose and Robert McClimens. The pleas were, first, not guilty; second, that the premises were the close and freehold of America Rose, Julius C. Churchman, Fremont B. Churchman, and John, Harriet, Mary, Minnie and Andrew Lane, as tenants in common, and that said Julius C. Churchman in his own right, said Thomas Rose, as servant of said America, and said Robert McClimens, as servant of said owners, and at the respective commands of said America and Julius, peaceably entered and took possession without force, etc., and third, that said close was not the close of said plaintiff. Replication to second and third pleas, that at the time when, etc., the plaintiff was in the peaceable possession of the said close. A general demurrer to this replication was overruled, and defendants excepted. No issue of fact was made upon it. The suit was dismissed as to John C. Rose, and the trial resulted in a verdict of guilty as to the defendants, Thomas Rose and Julius C. Churchman, and not guilty as to McClimens. Plaintiff remitted a part of the damages assessed, the court overruled appellants' motion for a new trial and rendered judgment against them for the residue; and they took this appeal.

It appears that in 1881 appellee's wife owned an undivided one-eighth of the premises by inheritance, and he another by purchase. He then filed a petition for partition, on which an order was made for the sale of the land. He testified that he requested Mr. John H. Churchman to bid it in for him; that Churchman agreed to do so; that they attended the sale together and Churchman did bid it in for him. The master in chancery who made the sale testified that Churchman told him after the sale that he had bought the land for Ruyle, and that he in fact applied in part payment the one-fourth of the proceeds that belonged to Ruyle

Rose v. Ruyle.

and his wife, by giving him, the master, their receipt therefor. Churchman obtained his deed from the master in October, 1883, and then put appellee in possession, which he held continuously until August, 1890, when the alleged trespass, by which he was ousted, was committed. During the period of his possession he made several payments to Churchman on account of the land, and put upon it lasting and valuable improvements—broke and cultivated ten or twelve acres of new ground. John H. Churchman died March 19, 1890, unmarried and without descendant. His heirs were his sister America, wife of appellant Thomas Rose, his brothers, Julius C. Churchman and Fremont B. Churchman, and the children of Mrs. Lane, a deceased sister, who resided in Oregon, and some or all of whom were minors. John C. Rose was the administrator. Appellants knew appellee was in possession and had been for a number of years, with the acquiescence of John H. Churchman, under whom they claim. He did not live on the place, and had rented the old dwelling-house and stable on it from time to time to different parties. They had been vacated just before the commission of the alleged trespass, and the doors, having no locks, had been nailed up by his direction. Thereupon appellants rented the premises to McClimens, and in the evening of the 21st of August, 1890, Julius Churchman took him there and put him in possession of the house. They say they found the door open, but Churchman failed to state that he did not know when or by whom it was opened or that he had nothing to do with it. McClimens put into the house a bed and cooking-stove and began plowing. There had been in cultivation some thirty or thirty-five acres, mostly in wheat, which appellee had harvested, and the residue in corn still standing and growing. A day or two after McClimens went in, appellee, in ignorance of that fact, sent his son, who had done a little plowing, to go on with that work. While he was so employed, Julius Churchman and a son of Thomas Rose came along and told him to stop. He replied that he would not, and they said if he did not they would put him out. On the next day they again came and

ordered him to stop, and on his refusal they set the plow out, and he then quit. The next day, when he was again plowing there, Churchman and Thomas Rose came and ordered him to unhitch the team, and on his refusal they took off the clevis or head iron, which they kept, put the plow out and led the horses from the field. Rose took the head iron to appellee and told him they had better go down on the following Monday to Hardin and settle the matter, to which he agreed. At that meeting appellants and their counsel were told by appellee's representative, for him, that the land had been bid off for him, how much he had paid, and that he was ready to pay the balance whenever the heirs put themselves in position to make him a deed; but nothing was settled, nor any understanding arrived at, and thereupon this suit was brought.

The alleged errors for which a reversal of the judgment is asked are, first the overruling of the demurrer to the replication to the second plea, and second, the admission of the testimony of plaintiff and the master in chancery as to John H. Churchman's promise to bid off the land for plaintiff and his admission or statement afterward that he had done so. Our statute declares that "no person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he shall not enter with force, but in a peaceable manner." Sec. 1, Chap. 57, R. S. To justify an entry, then, as against a party in actual, peaceable possession, there must be a legal right to enter against him and it must be exercised without force, in a peaceable manner. A good plea of *liberum tenementum* must aver both. It is a plea of confession and avoidance, the legal effect of which is to "admit such a possession in the plaintiff as would enable him to maintain the action against a wrong-doer, and to assert a freehold in the defendant, with a right to immediate possession as against the plaintiff." Fort Dearborn Lodge v. Klein, 115 Ill. 187. Under it the defendant could not justify his forcible eviction of one in the actual, peaceable possession of real estate. Haskins v. Haskins, 67 Ill. 446. A landlord has no right to make a

Rose v. Ruyle.

forcible entry on his tenant holding over.    Farwell v. War-
ren, 51 Ill. 467.    Both the right to immediate possession
and the peaceable manner of the entry being essential to the
defense and thus averred, the plaintiff could reply as to
each or either by a traverse or by confession and avoidance,
as in other cases.    In Ft. Dearborn Lodge v. Klein, *supra*,
it was said that this plea "put the plaintiff to show how he
has a possession in himself consistent with the freehold be-
ing in another, unless he chooses to traverse the title set up
in the plea." (P. 189.)    That title is regarded as a fact,
raising a presumption of the right to possession, and to avoid
it the plaintiff must aver and assume the burden of proving
facts which would make his possession lawful consistently
with that title.    In this case plaintiff did not choose to dis-
pute the title, but did claim, as the evidence abundantly
shows, that notwithstanding such title appellants had not
the right to immediate possession as against him.    What he
averred, however, was only that he was in "peaceable"
possession.    If that was equivalent to "lawful" possession,
it would still be but a conclusion.    He should have stated
the facts from which it was to be drawn; in other words,
"*how*" his possession was consistent with the title admitted.
The overruling of the demurrer thereto was therefore error.
But was it so material as to require a reversal of the judg-
ment?    Can it be reasonably claimed that injustice may
have been done to appellants by reason of it?    Though issue
of fact was actually joined only upon the plea of not guilty,
the case was really tried upon its merits, including the
question evidently intended to be made upon the second
plea and which, doubtless, would have been made by an
amended replication if the demurrer had been sustained.
That was understood to be the point in controversy, the
facts of actual possession on one side and legal title to the
freehold on the other being undisputed.    All the evidence
offered, that would have been admissible under any proper
pleadings, was received and submitted to the jury.    If
plaintiff's possession at the time of defendant's entry was
lawful, then such entry, whether forcible or peaceable, was

unlawful, since there is no pretense that it was made with his consent. Possession obtained from the owner under a verbal agreement to purchase, with payment in part and substantial improvement made, is lawful as against such owner and his heirs, until the right is forfeited or determined according to the agreement. Before such forfeiture or determination it can not be divested, against his will, by mere entry. That John H. Churchman was the owner when appellee went into possession; that he purchased with means furnished in considerable part, for that purpose, by appellee and his wife; that he put appellee in possession; that appellee reduced to cultivation a considerable portion of the premises, and retained possession with the acquiescence of said Churchman until the latter's death, and afterward, until the entry of appellants here complained of, are facts fully shown by evidence admitted without objection.

But the court admitted also and over objection, the testimony of appellee that said Churchman, at his request, promised to buy the land for him, and of the master that he stated, after the purchase, that he had so purchased; and these rulings are assigned for error as in violation of the statute of frauds. R. S. Ch. 59, Secs. 2 and 9. The testimony in question did tend to show a parol agreement for the sale of the land by Churchman to appellee. But this was not an action of ejectment, nor was the legal title to the land at all in controversy. It was not the object of the suit or of this testimony to charge any person upon the parol contract to establish title, enforce performance of the contract or recover damages for its breach, but only to characterize appellee's possession, the rightfulness of which was in question. The understanding between him and the owner in relation to the possession when the one gave and the other received it, however that understanding was shown, was part of the *res gestae*. The master's testimony was simply corroborative of appellee's and in no way contradicted his report of the sale. We think this evidence would have been competent against Churchman and was against appellants.

No inquiry was made on either side for any particulars of the understanding. From the little that did appear the jury might well believe that Churchman was to make a deed to appellee on receipt of the amount he had advanced, with legal interest. He told the master that "Ruyle had requested him to buy the land for him and that he was doing it to help the poor devil along." He was a bachelor, a friend of Ruyle, able and disposed to help him. His security was satisfactory and would be increased by whatever of value Ruyle should put upon the land. If no time was fixed for payment the law would imply a reasonable time and reasonable notice to Ruyle. He put him in possession and allowed him to hold it without disturbance or complaint, so far as appears. It is probable that Ruyle, with his knowledge, did some work on the place in the summer and fall before his death, in preparation for the next season's crops. The fair inference is that, although payment had not been made in full at the time of his death, Ruyle was not then in default according to their understanding, or that nothing had been done to take advantage of it, and the possession was still rightful as against him. Some of his heirs lived at a great distance and were under age. Under these circumstances, and without any demand of payment or possession, or notice to quit or tender of a deed, and while an annual crop planted by Ruyle was standing and ripening on the premises, appellants made the entry here complained of and expelled him. They were chargeable with notice of his rights, whatever they were. Doyle v. Teas, 4 Scam. 202; Keys v. Test, 33 Ill, 316. A month or more before the entry he had told the administrator (who was originally a party defendant) that he was ready to pay in full whenever the heirs put themselves in position to make him a good deed, and repeated the statement to these appellants just after it and before the suit was brought.

Though the defendant Thomas Rose, was not present when the entry was made, yet it was made for his benefit as well as that of Julius Churchman; and with full knowledge of the facts he approved and ratified it. He was therefore

responsible for it as fully as if he had taken part in it. We are of opinion that the law did not give him a right of entry, even in a peaceable manner, and it is by no means clear that it was so made.

In the argument for appellants there is some mild complaint of the instructions given to the jury, but they are not therein sufficiently set forth to enable us to pass intelligently upon that question; and none of them are found in the abstract. On the whole we think it clear that justice has been done, and see in the record no such error as should reverse the judgment. It will therefore be affirmed.

*Judgment affirmed.*